J. Steven Sparks/Bar No. 015561
**SANDERS & PARKS, P.C.**
3030 North Third Street, Suite 1300
Phoenix, AZ  85012-3099
Direct Phone: (602) 532-5769
Direct Fax: (602) 230-5051
steve.sparks@sanderssparks.com

Colm A. Moran ((*pro hac vice* forthcoming)
Robert E. Feyder (*pro hac vice* forthcoming)
**SHOOK HARDY AND BACON, L.L.P.**
2049 Century Park East, Suite 3000
Los Angeles, CA 90067-3204
Telephone: (424) 285-8330
Facsimile:  (424) 204-9093
cmoran@shb.com
rfeyder@shb.com

*Attorneys for Plaintiff The Lion Electric Company*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| The Lion Electric Company, a Canadian corporation,<br><br>Plaintiff,<br><br>v.<br><br>Nikola Corporation, a Delaware corporation,<br><br>Defendant. | Case No.:<br><br>**PLAINTIFF THE LION ELECTRIC COMPANY'S COMPLAINT FOR:**<br><br>1. **TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS; AND**<br><br>2. **TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY** |

## **COMPLAINT**

Plaintiff The Lion Electric Company ("Lion" or "Plaintiff") brings this action against Defendant Nikola Corporation ("Nikola" or "Defendant") and states as follows:

**PARTIES**

1. Lion is a Canadian corporation with its principal place of business and headquarters located in Saint-Jerome (Quebec), Canada. Lion is an original equipment manufacturer of electric vehicles. As such, it creates, designs, and manufactures all-electric Class 5 to Class 8 commercial urban trucks and all-electric buses and minibuses for the school, paratransit, and mass transit segments.

2. Nikola is a Delaware corporation with its principal place of business and headquarters located in Phoenix, Arizona. Nikola manufactures various types of zero-emission battery-electric and hydrogen-electric vehicles.

3. Nikola is a direct competitor of Lion in the Class 8 tractor category.

**JURISDICTION AND VENUE**

4. The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(2). The citizenship of Lion (a citizen of Canada) is completely diverse from the citizenship of Nikola (a citizen of Delaware or Arizona). 28 U.S.C. § 1332(c). As set forth in detail below, the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

5. The Court has personal jurisdiction over Nikola by virtue of its transacting, doing, and soliciting business in the State of Arizona and having its principal place of business and headquarters in Phoenix, Arizona.

6. Venue is proper in this judicial district because Nikola, the sole defendant in this action, resides therein. 28 U.S.C. § 1391(b)(1).

# GENERAL ALLEGATIONS

**A.     Romeo Systems, Inc.**

7.     Romeo Systems, Inc. ("Romeo") is in the business of manufacturing, designing, and selling lithium-ion battery modules and battery packs for commercial trucks, and it describes itself as "an energy technology leader delivering advanced electrification solutions for complex commercial vehicle applications." Romeo supplies both Lion and Nikola with battery packs to power their electric vehicles. In fact, prior to Nikola's acquisition of Romeo described below, Nikola was (and remains) Romeo's largest production customer.

**B.     The Purchase Agreement Between Lion and Romeo**

8.     As part of Lion's mission to promote the purchase of its vehicles by reducing barriers to electric-vehicle adoption, Lion developed capabilities to design, manufacture and assemble various components of its vehicles.

9.     Lion, however, does not manufacture its own battery packs for its new truck vehicle model, the Lion8T. Lion thus sought Romeo's expertise to design and manufacture customized battery modules to be mounted on the Lion8T.

10.    On this basis, Lion and Romeo entered into a Purchase Agreement on November 2, 2020 (the "Purchase Agreement"), for the purchase by Lion of batteries and battery packs ("Battery Packs") manufactured by Romeo for an initial duration of five years after the start of serial production of the Battery Packs and approval of Romeo's production tooling by Lion, subject to renewal (Section 11.1). A copy of the version of the Purchase Agreement filed with Canadian and U.S. securities regulators, portions of which have been

redacted as part of the filings, is attached hereto as Exhibit A and incorporated herein by reference.[1]

11. So pleased with the Purchase Agreement was Romeo that on November 17, 2020, it issued a press release titled "ROMEO POWER SECURES $234 MILLION MULTI-YEAR PRODUCTION CONTRACT WITH LION ELECTRIC," in which it publicly disclosed the Purchase Agreement:

> Romeo Systems, Inc. ("Romeo Power"), a leader in designing and manufacturing lithium-ion battery modules and packs for commercial electric vehicles, has secured another large production contract with a commercial vehicle leader. Romeo Power announced today that it has secured a multi-year production contract with The Lion Electric Co. ("Lion Electric"), a leading OEM in North American electric commercial transportation. The contract is expected to generate $234 million in revenue for Romeo Power over a five-year period beginning in 2021. The contract spans across Lion Electric's fleet of class 6-8 commercial urban trucks and all-electric buses.
>
> Romeo Power is very excited about this partnership with Lion Electric, which represents Romeo Power's eighth production contract in North America and nearly doubles our contracted revenue to date. Lion has already proven itself as a formidable leader in the electrification of the transportation industry with its growing fleet of commercial electric vehicles on the road today," commented Lionel Selwood, Jr., Chief Executive Officer of Romeo Power. "This contract demonstrates increasing customer demand for our products, reinforces our ability to turn our pipeline into contracted revenue, and further validates Romeo Power as the industry leader in battery pack and module technology."

12. Considering this long-term collaboration, and in reliance on Romeo's commitments, Lion invested significant resources to design its Lion8T to accommodate Romeo's Battery Packs.

---

[1] Romeo also publicly filed a redacted version of the Purchase Agreement.

13. The Purchase Agreement was indeed crucial to Lion's own commitments towards future purchases of the Lion8T by its customers. Production and customer deliveries of the Lion8T were planned for the fourth quarter of 2022 and depended on timely delivery of the Battery Packs.

14. Pursuant to the Purchase Agreement, the parties' key obligations are the following:

    a. Romeo represented having the resources and capacity to fulfill its obligations under the Purchase Agreement, and to support plans for Lion's growth (Section 2.2). Moreover, Romeo recognized being an integral part of Lion's success (Section 2.2).

    b. Romeo is obligated to sell to Lion the Battery Packs at the prices established under the Purchase Agreement (Section 3.1). The parties therefore contractually agreed on a ceiling price or maximum price (the "Ceiling Price") (Sections 9.1 and 9.2 and Schedule 3);

    c. Lion is required to issue purchase orders to Romeo and Romeo is obligated to accept such purchase orders once issued by Lion. Romeo can only reject an issued purchase order in the event that Romeo has terminated the Purchase Agreement for cause (Sections 6.1, 6.2, 6.4 and 11.4);

    d. Romeo has an affirmative obligation to take all actions, at its sole costs and expenses, to ensure the uninterrupted supply of Battery Packs to Lion (Section 12.5); and

e. Romeo recognized that time, quantity, and delivery of the Battery Packs are of the essence under the Purchase Agreement (Section 7.1).

f. The Battery Packs' Ceiling Price was a critical aspect of the Purchase Agreement. Lion would not have entered into the Purchase Agreement but for this pricing structure.

g. Romeo, moreover, publicly acknowledged in a press release that the Purchase Agreement provided for a minimum purchase commitment by Lion of approximately $234 million of Battery Packs.

h. Lion further undertook to purchase a minimum quantity of Battery Packs for the duration of the Purchase Agreement, thereby ensuring consistent revenue for Romeo (Section 3.2).

**C.   Romeo's Unexpected Refusal to Honor its Pricing Commitments**

15.   Lion and Romeo worked in close collaboration following the execution of the Purchase Agreement. Romeo initially kept Lion informed of its progress and corrected technical difficulties as they appeared, to guarantee timely delivery of the Battery Packs.

16.   Lion, moreover, performed a third-party audit at Romeo's facility in April 2022 that confirmed Romeo's ability to deliver the Battery Packs and ensure the continuity of Lion's operations.

17.   In essence, until late May 2022, Lion and Romeo's relationship was collaborative and Romeo appeared to be honoring its contractual obligations.

18.   However, on May 24, 2022, Romeo unexpectedly reneged on the contractually agreed-upon Ceiling Price. Indeed, as set forth in an email dated May 24,

2022 from Hernan Henriquez, Romeo's Senior Vice President of Sales, Romeo proposed to sell only 40 units at the Ceiling Price, and all additional units at a substantially higher price through the end of 2023.

19. Lion refused to accept Romeo's unilateral change in pricing, for pricing was a fundamental element of Lion's consent to a long-term collaboration with Romeo.

20. Despite being reminded of its contractual obligation, Romeo insisted on a final price representing an increase over the Ceiling Price of approximately 65%, citing rising production costs and stating that it was "unwilling to lose money to deliver more packs at the contracted price…."

21. By email dated May 27, 2022, Mr. Henriquez, explained Romeo's refusal to honor the ceiling price:

> In the meantime, I want to share the precarious supply situation that we are in […] I'm being fully transparent and want to help but this is the reality. We are at our bottom number and the agreement I sent to [Lion] is our final agreement. In order to help secure your delivery I strongly recommend that we move forward with the 40 units at the suggested price and the balance of the order comes in at the [higher price].

22. By email dated May 27, 2022, Ms. Lauren Webb, Romeo's Chief Strategy and Commercial Officer, went even further by stating that the fundamental point of contention was not supply chain issues, but rather "to establish a fair price that allows us to have a mutually successful long-term relationship…"

23. Romeo's sudden refusal in May 2022 to honor the Ceiling Price and its contractual obligations to Lion was orchestrated by Nikola. Indeed, according to Nikola's Form S-4 Registration Statement as filed with the SEC on August 29, 2022, in May 2022, Nikola had become increasingly concerned about Romeo's ability to consistently deliver

battery modules and packs to Nikola. As a result of this concern, on May 10, 2022, Nikola submitted a non-binding proposal to acquire Romeo, subject to the completion of, *inter alia*, Nikola's due diligence. On May 16, 2022, Romeo opened a virtual data room to Nikola to facilitate the due diligence process and the parties continued to exchange information and participate in meetings throughout May and June 2022. As alleged below, moreover, only months later, Nikola acquired Romeo for the purpose of securing its own battery supply at the expense of Romeo's other customers.

        **D.**      **Nikola's Acquisition of Romeo**

      24.      On July 30, 2022, Nikola and Romeo entered into that certain Agreement and Plan of Merger and Reorganization (the "Acquisition Agreement"), pursuant to which Nikola agreed to acquire Romeo for approximately $144 million, and pursuant to which Romeo would cease to exist and become a wholly-owned subsidiary of Nikola (the "Acquisition").

      25.      On August 1, 2022, Nikola formally announced the Acquisition, and during an M&A call that day, Nikola confirmed that it intended for Romeo to supply batteries to Nikola only and to wind down or terminate Romeo's supply agreements with its other customers over the subsequent 30 days to six months. On or about the same day, Nikola's CEO, Mark Russell, stated, "We need as many batteries as [Romeo] can produce. It can be a challenge for them to keep up with us.  We need all the help we can get there." Mr. Russell also said, "We're not going to be a merchant of batteries. This in the long run will become our in-house capability."

26. Shortly thereafter, on August 4, 2022, the Chief Financial Officer of Nikola, Kim Brady, informed investors that "existing Romeo customer contract runoff" would negatively impact Nikola's gross margin for the third and fourth quarters of 2022.

27. According to Nikola's August 29, 2022 Form S-4 Registration Statement, Nikola had become aware during the course of its due diligence that Romeo was facing a cash shortfall and as a result, Nikola agreed to provide Romeo with up to $50 million in the aggregate of liquidity support prior to the completion of the Acquisition.

28. A few days after this public announcement, and at Nikola's instruction, rather than claiming that the increase in prices prevented Romeo from performing under the Purchase Agreement, Romeo instead claimed that it could not supply the Battery Packs due to alleged "technical difficulties."

29. To continue the scheme begun in May 2022, Romeo, on instruction from Nikola, employed the "technical difficulties" excuse from August 2022 onwards. Indeed, in an email from Ms. Webb dated August 12, 2022, Romeo, for the first time, informed Lion of irregular results in safety testing. For that reason, Romeo alleged that it could not build the Battery Packs scheduled for shipment on September 7, 2022.

30. In an email dated October 4, 2022 from Ms. Webb, Romeo maintained its inability to deliver the promised Battery Packs because of alleged vibration test failures, and thus rejected both purchase orders, in violation of the terms of the Purchase Agreement. Romeo thus did not build any of the 296 Battery Packs ordered by Lion.

31. Lion's deliveries of the Lion8T were put at significant risk as a result of these actions. Lion thus requested evidence to substantiate Romeo's claim on multiple occasions,

which requests were met with only limited, delayed, or insufficient responses by Romeo. For instance, by letter dated October 13, 2022, Lion again asked for supporting documents, noting Romeo's lack of cooperation in this regard:

> Further to these allegations, Lion requested that Romeo provide the relevant documents evidencing such alleged technical issues with the packs for further analysis by Lion's technical team, including the comprehensive summary (the "Comprehensive Summary") addressing reports from the three vibe tests, op shock, and safety shock teardowns (the "Requested Information"). Although Romeo initially agreed to provide such Requested Information, to date, only very limited information has been provided despite Lion's insistence. Lion takes note of Romeo's undertaking to provide the Comprehensive Summary by October 14, 2022, end of day and hereby advises that it will not tolerate any further delays in providing same.

32. To date, Romeo has yet to provide sufficient documentation evidencing these alleged technical failures and to otherwise cooperate with Lion.

33. On October 14, 2022, the Acquisition was finalized.

34. Thereafter, Romeo ceased to provide technical support altogether. While Romeo engineers had regularly attended weekly meetings with Lion to discuss technical items such as vibration tests, Romeo has not responded to Lion's requests for technical support since October 26, 2022. This is unsurprising, given how the situation unfolded with the direct involvement of Nikola.[2]

---

[2] Based on Romeo's breach of its contractual obligations under the Purchase Agreement, and pursuant to Sections 18.16 and 18.17 of the Purchase Agreement, Lion submitted to the International Court of Arbitration of the International Chamber of Commerce a request for arbitration against Romeo, Case No. 27332/PDP on October 26, 2022 (the "ICC Arbitration"). The ICC Arbitration is currently pending in Quebec, Canada. The ICC

35. On November 3, 2022, during Nikola Corporation's third quarter 2022 earnings call, Mr. Brady publicly disclosed what Lion suspected all along – that Nikola had been interfering with Romeo's existing contracts:

> And as you know Romeo, really this was a small company, it did not have that scale to be able to reduce their cost, in terms of manufacturing efficiencies. And the -- when we -- as we suspected, we knew that most of the Romeo contracts that were existing contracts were essentially loss leaders. We have been able to address a lot of those contracts so that we are very much focused on simply supplying battery modules and packs to Nikola.

36. On November 11, 2022, Lion formally requested, in writing, to conduct an on-site audit of Romeo pursuant to Section 12.7 of the Purchase Agreement in order to understand and potentially resolve the alleged "technical difficulties" cited by Romeo as an excuse for non-performance. Romeo did not respond to this request.

37. On December 7, 2022, Romeo sent, at Nikola's instruction, a written notice purporting to terminate the Purchase Agreement, on the basis of the same alleged "technical difficulties." By letter to Romeo dated December 22, 2022, Lion disputed Romeo's attempt to purportedly terminate the Purchase Agreement.

E.   **The Resulting Harm to Lion**

38. In reliance on the Purchase Agreement and on its business relationship with Romeo, Lion had in excess of 100 Lion 8T vehicles scheduled for production in 2022 and 2023 (the "Lion Vehicle Orders"). As a consequence of not receiving the Battery Packs from Romeo pursuant to the issued purchase orders and future purchase orders to be issued

---

Arbitration against Romeo sounds in contract and the action herein against Nikola sounds in tort. The two proceedings will not result in double recovery.

by Lion under the Purchase Agreement, Lion has been unable to timely satisfy a number of the Lion Vehicle Orders. As a result, Lion has and will have incurred substantial damages, not including the risk to future orders and of reputational injury.

39. Even worse, after directing Romeo to breach and purport to terminate the Purchase Agreement, and to otherwise cease developing and manufacturing the Battery Packs for Lion, Nikola contacted Lion's existing customers, telling them of Lion's inability to acquire Battery Packs for the Lion8T trucks (which, as set forth above, was as a result of Nikola's conduct) and offering to sell them Nikola's electric vehicles in lieu of Lion's.

## FIRST CLAIM

### (For Tortious Interference with Contractual Relations)

40. Plaintiff incorporates each and every allegation of Paragraph 1 through 39 of this Complaint as though fully set forth herein.

41. The Purchase Agreement is a valid contractual relationship between Lion and Romeo.

42. At all times relevant, Nikola knew of the Purchase Agreement. Indeed, on November 17, 2020, Romeo issued a press release in which it disclosed the Purchase Agreement to the public, describing it as a $234 million multi-year production contract." Both Lion and Romeo, moreover, publicly filed redacted versions of the Purchase Agreement. Nikola and Romeo also discussed the Purchase Agreement as early as May 2022 during their merger negotiations.

43. As set forth in detail above, Nikola intentionally interfered with the Purchase Agreement and Lion's contractual relationship with Romeo by inducing or causing Romeo

to breach, and thereafter to purport to terminate, the Purchase Agreement. Nikola, moreover, knew that as a result of its conduct, Romeo would breach and ultimately unilaterally, and without basis, purport to terminate the Purchase Agreement. At the very least, Nikola's knew that its conduct would result in making Lion's performance under the Purchase Agreement more expensive and burdensome.

44. As a result of such interference, Lion has incurred damages in excess of $75,000 as well as reputational harm resulting from being unable to timely fulfill certain of the Lion Vehicle Orders.

45. In intentionally interfering with the Purchase Agreement, Nikola acted improperly. Indeed, as set forth above, until late May 2022, Lion and Romeo's relationship was collaborative and Romeo appeared to be honoring its contractual obligations under the Purchase Agreement.

46. Starting on May 24, 2022, which coincided with merger negotiations between Nikola and Romeo, Romeo, at Nikola's direction, suddenly changed course. Citing rising production prices and its unwillingness to lose money, Romeo refused to honor the Ceiling Price and demanded a substantial pricing increase.

47. After the Acquisition was announced on August 1, 2022, moreover, Romeo claimed, at Nikola's direction, that it could not perform as a result of alleged "technical difficulties."

48. Nikola's improper motive is revealed by its public statements (*e.g.,* that: (i) Romeo's existing "contract runoff" would negatively impact Nikola's gross margins for the third and fourth quarters of 2022; (ii) Nikola suspected and knew that Romeo's existing

contracts were "loss leaders"; and (iii) Nikola "has been able to address a lot of those contracts so that we are very much focused on simply supplying battery modules and packs to Nikola"), and, after instructing Romeo to breach and purportedly terminate the Purchase Agreement, by informing existing Lion customers that Lion was having problems acquiring battery packs for its Lion8T trucks, and offering to sell Nikola vehicles to those same customers in lieu of Lion's.

49.     Nikola's motive to interfere with the Purchase Agreement and Lion's contractual relationship with Romeo during its merger negotiations with Romeo and after the Acquisition was not only to avoid what it considered a "loss leader" contract at Lion's expense (*i.e.,* the Purchase Agreement), but to ensure that Romeo would only supply battery modules and packs to Nikola, thereby preventing Lion, a direct competitor of Nikola, from fulfilling the Lion Vehicle Orders and other future orders. In addition, Nikola hoped to leverage its interference by also offering to sell its own electric vehicles to Lion's existing customers in lieu of Lion's.

50.     By engaging in such conduct, Nikola wrongfully deprived Lion of its contractual right to purchase Battery Packs from Romeo at the Ceiling Price under the Purchase Agreement, an arms-length agreement that it entered into in November 2020 and upon which it relied to fulfill the Lion Vehicle Orders and other future orders. Nikola has also deprived Lion of its contractual relationship with Romeo and the supply source upon which it relied to deliver the Lion Vehicle Orders and other future orders. Indeed, Nikola knew that its conduct would leave Lion without an alternative source from which to obtain battery packs for the Lion 8T to fulfill the Lion Vehicle Orders and other future orders.

Nikola's interference has also harmed Lion's ability to fairly compete with Nikola and other electric vehicle manufacturers. In sum, Nikola's interference with the Purchase Agreement and Lion's contractual relationship with Romeo was not only intentional, but wrongful.

51. Nikola's conduct, as alleged above, was intended to cause harm to Lion and was malicious in fact, thereby entitling Lion to punitive damages.

## SECOND CLAIM

### (For Tortious Interference with Business Expectancy)

52. Plaintiff incorporates each and every allegation of Paragraph 1 through 51 of this Complaint as though fully set forth herein.

53. As alleged in detail above, Lion had a valid business expectancy with Romeo; namely, that pursuant to its business relationship with Romeo, Romeo would deliver Battery Packs to Lion, the Battery Packs would be delivered at the Ceiling Price, and as a result, Lion would be able to fulfill the Lion Vehicle Orders and other future customer orders (the "Business Expectancy").

54. At all times relevant, and as alleged above, Nikola knew of the Business Expectancy.

55. As alleged in detail above, Nikola intentionally interfered with the Business Expectancy by inducing or causing Romeo to cease developing and manufacturing the Battery Packs and to refuse to supply Lion with Battery Packs at any price, much less the Ceiling Price. Nikola, moreover, knew that its conduct would result in the termination of the Business Expectancy and deprive Lion of the supply source upon which it relied to

deliver the Lion Vehicle Orders and other future orders. Indeed, Nikola knew that its conduct would leave Lion without an alternative source from which to obtain battery packs for the Lion 8T at any price to fulfill the Lion Vehicle Orders and other future orders.

56.     As a result of such interference, Lion has incurred damages in excess of $75,000 as well as reputational harm resulting from being unable to timely fulfill certain of the Lion Vehicle Orders.

57.     As alleged in detail above, in intentionally interfering with the Business Expectancy, Nikola acted improperly. Until late May 2022, Lion and Romeo's relationship was collaborative and Romeo appeared to be working on supplying Battery Packs to Lion consistent with the Business Expectancy.

58.     Starting on May 24, 2022, which coincided with merger negotiations between Nikola and Romeo, Romeo, at Nikola's direction, at first, demanded a substantial pricing increase for the Battery Packs and then subsequently, claimed that it could not supply any Battery Packs to Lion at any price due to alleged "technical difficulties."

59.     Nikola's improper motive is revealed by its public statements, set forth above, and its conduct, including by informing existing Lion customers that Lion was having problems acquiring battery packs for its Lion8T trucks, and offering to sell Nikola vehicles to those same customers in lieu of Lion's.

60.     Nikola's motive to interfere with the Business Expectancy during its merger negotiations with Romeo and after the Acquisition was not only to avoid what it considered an unprofitable business relationship at Lion's expense, but to ensure that Romeo would only supply battery modules and packs to Nikola, thereby preventing Lion, a direct

competitor of Nikola, from fulfilling the Lion Vehicle Orders and other future orders. In addition, Nikola hoped to leverage its interference by also offering to sell its own electric vehicles to Lion's existing customers in lieu of Lion's.

61. By engaging in such conduct, Nikola wrongfully deprived Lion of the Business Expectancy and the supply source upon which it relied to deliver the Lion Vehicle Orders and other future orders. Indeed, Nikola knew that its conduct would leave Lion without an alternative source from which to obtain battery packs for the Lion 8T to fulfill the Lion Vehicle Orders and other future orders. Nikola has also harmed Lion's ability to fairly compete with Nikola and other electric vehicle manufacturers. In sum, Nikola's interference with the Business Expectancy was not only intentional, but wrongful.

62. Nikola's conduct, as alleged above, was intended to cause harm to Lion and was malicious in fact, thereby entitling Lion to punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment in its favor and against Defendant as follows:

1. On all claims, for damages, in excess of $75,000, in an amount to be determined at trial;

2. On all claims, for punitive damages in an amount to be determined at trial;

3. On all claims, for pre-judgment and post-judgment interest at the legal rate;

4. On all claims, for costs of suit; and

5. On all claims, for such other relief as the Court deems proper and just.

# JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff The Lion Electric Company respectfully demands a trial by jury of all issues triable by a jury in this case.

**RESPECTFULLY SUBMITTED** this 2nd day of March, 2023.

**SANDERS & PARKS, P.C.**

By s/ J. Steven Sparks
J. Steven Sparks
3030 North Third Street, Suite 1300
Phoenix, AZ  85012-3099
*Attorneys for Plaintiff The Lion Electric Company*

**SHOOK HARDY AND BACON, L.L.P.**

Colm A. Moran
Robert E. Feyder
2049 Century Park East, Suite 3000
Los Angeles, CA 90067-3204
*Attorneys for Plaintiff The Lion Electric Company*