**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Lion Electric Company, a Canadian corporation,<br><br>          Plaintiff,<br><br>v.<br><br>Nikola Corporation, a Delaware corporation,<br><br>          Defendant. | No. CV-23-00372-PHX-DGC<br><br>**ORDER** |

Lion moves for leave to file an amended complaint (Doc. 121) and Nikola asks the Court to strike Lion's September 27, 2024 disclosure statements as untimely (Doc. 120).[1] The Court heard oral argument on November 21, 2024. *See* Doc. 138. The Court will deny the motion for leave to amend and provide some relief to Nikola with respect to the Lion disclosure statement.

## I.   Lion's Motion for Leave to Amend.

Rule 16 provides that deadlines established in a case management order may "be modified only for good cause[.]"  Fed. R. Civ. P. 16(b)(4).  "Good cause" exists when a deadline "cannot reasonably be met despite the diligence of the party seeking the

---

[1] This order primarily will cite to redacted documents filed on the docket by the parties, even though the Court concludes – as discussed at the end of this order – that the parties have seriously over-redacted motions and attachments.  The Court will require the parties to propose a joint solution to this confused state of the record.

1    extension." Fed. R. Civ. P. 16 advisory committee note to 1983 amendment. Thus, "Rule

2    16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the

3    amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992).

4         When leave to amend is sought after an amendment deadline set by the Court has

5    passed, the party seeking amendment must satisfy Rule 16's good cause standard before

6    the Court will consider whether Rule 15 is also satisfied. *Johnson v. Cnty. of San*

7    *Bernardino*, No. 20-55186, 2021 WL 4810646, at *1 (9th Cir. Oct. 15, 2021) ("The

8    [motion for leave to amend], filed almost a year after the amendment cutoff date set by the

9    district court, was indisputably untimely. Thus, [plaintiff] bore the burden of establishing

10   'good cause' for his [motion's] untimeliness, Fed. R. Civ. P. 16(b)(4), which in turn

11   required him to show he could not have filed a timely [motion] despite acting with

12   'diligence,' [*Johnson*, 975 F.2d at 609.]").

13        **A.    Background.**

14        This case involves direct competitors offering similar electric vehicles. Doc. 1 ¶ 3.

15   Lion is a Canadian corporation that designs and manufactures electric medium- and heavy-

16   duty commercial vehicles. *Id.* ¶ 1. Nikola manufactures electric heavy-duty commercial

17   vehicles. *Id.* ¶ 2. The parties power their vehicles with rechargeable batteries. *Id.* ¶ 7.

18        On November 2, 2020, Lion entered into a Purchase Agreement with Romeo

19   Systems, Inc. *Id.* ¶ 10; Doc. 1-2. The Purchase Agreement required Romeo to manufacture

20   and deliver custom batteries for Lion's new vehicle, the Lion8T. Doc. 1 ¶¶ 9-10. Lion

21   agreed to purchase a minimum quantity of batteries, valued at $234 million. *Id.* ¶ 14.

22   Romeo could reject purchase orders only if the Purchase Agreement was terminated. *Id.*

23   The Agreement included a pricing schedule with price ceilings, and was to remain in effect

24   for five years from the start of production. Doc. 1 ¶ 10.

25        On May 10, 2022, Nikola initiated an acquisition of Romeo and began due

26   diligence. *Id.* ¶ 23. Later that month, Romeo proposed selling Lion an initial 40 batteries

27   at the ceiling price, with additional batteries ordered through December 2023 to cost 65%

28

1   more.  *Id.* ¶¶ 18, 20.  Romeo cited rising production costs.  *Id.* ¶ 20.  Lion sought to enforce

2   the ceiling price.  *Id.* ¶¶ 19-20.

3       On August 1, 2022, Nikola announced its $144 million acquisition of Romeo as a

4   wholly owned subsidiary.  *Id.* ¶¶ 24-25.  Nikola's chief executive officer stated that Nikola

5   "need[ed] as many batteries as Romeo [could] produce" and was "not going to be a

6   merchant of batteries."  *Id.* ¶ 25.

7       Nikola's chief financial officer predicted that Nikola's gross profit margin would be

8   impacted by "existing Romeo customer contract runoff" in the third and fourth quarters of

9   2022.  *Id.* ¶ 26.  Nikola also acknowledged in a form filed with the U.S. Securities &

10  Exchange Commission that Romeo lacked sufficient liquidity.  *Id.* ¶ 27.

11      On August 12, 2022, Romeo informed Lion that it could not fill Lion's September

12  2022 order because of technical difficulties.  *Id.* ¶¶ 28-30.  In October, Lion requested

13  documentation of the technical difficulties, and in November sought an on-site audit of

14  Romeo's facilities pursuant to the Purchase Agreement.  *Id.* ¶¶ 31, 36.  Romeo never

15  provided the requested documents or the on-site audit.  *Id.* ¶¶ 32, 36.

16      Nikola's acquisition of Romeo was finalized on October 14, 2022.  *Id.* ¶ 33.  On

17  December 7, 2022, Romeo terminated the Purchase Agreement with Lion, citing technical

18  difficulties.  *Id.* ¶ 37.

19      Lion claims that it cannot produce more than 100 Lion8T vehicles because of

20  Nikola's orchestration of Romeo's refusal to honor the ceiling price (*id.* ¶ 23), Nikola's

21  instruction that Romeo cite technical difficulties as the reason for the price increase (*id.*

22  ¶¶ 28-30), and Nikola's direction that Romeo terminate the Purchase Agreement (*id.* ¶ 37).

23  Lion claims Nikola tortiously interfered with Lion's contractual relations and business

24  expectancies (*id.* ¶¶ 40-51) and seeks compensatory and punitive damages (*id.* at 17).

25      The Court entered a Case Management Order on October 17, 2024.  Doc. 39.  The

26  Order set an amendment deadline of December 18, 2024 and a fact discovery deadline of

27  August 2, 2024.  *Id.* at 1.  The Order also advised the parties that "the Court intends to

28  enforce the deadlines set forth in this Order, and should plan their litigation activities

accordingly." *Id.* at 4. On April 29, 2024, Lion sought an extension of the discovery schedule which Nikola did not oppose. Doc. 49. The Court extended the fact discovery deadline to October 31, 2024. Doc. 52. Lion did not seek, and the Court did not extend, the deadline for amending pleadings. *See* Docs. 49, 52.

Lion filed its motion to amend on September 20, 2024, almost one year after the start of discovery, more than nine months after the amendment deadline, and about one month before the close of the extended fact discovery period. Docs. 75, 76. Lion seeks to add three new Individual Defendants to the case: Kim Brady, Nikola's Chief Financial Officer; Joseph Kiessig, Nikola's Director of Corporate Finance and Strategy; and Britton Worthen, Nikola's Executive Vice President, Chief Legal Officer, and Corporate Secretary. Doc. 121-1 at 8-9. The proposed amended complaint would also add two new claims for aiding and abetting tortious interference with contract and aiding and abetting tortious interference with business expectancy. *Id.* at 40-41.

**B.    Lion Has Not Shown Good Cause.**

The key question is whether Lion has shown good cause for extending the Court's amendment deadline nine months. Fed. R. Civ. P. 16(b)(4). As noted above, good cause exists if Lion could not have met the deadline through reasonable diligence. Lion has not shown good cause. Lion's original allegations in this case can be summarized as follows:

- Until late May 2022, Lion and Romeo's relationship was collaborative and Romeo appeared to be honoring the Purchase Agreement. Doc. 1, ¶ 17.

- On May 24, 2022, Romeo unexpectedly reneged on the contractually agreed-upon ceiling price. *Id.* ¶ 18.

- Romeo's sudden refusal to honor the ceiling price was orchestrated by Nikola. *Id.* ¶ 23.

- On July 30, 2022, Nikola and Romeo entered into an acquisition agreement under which Romeo became a wholly-owned subsidiary of Nikola. *Id.* ¶ 24.

- On August 1, 2022, Nikola formally announced the acquisition and confirmed that it intended for Romeo to supply batteries to Nikola alone and to wind down or terminate Romeo's supply agreements with other customers.  *Id.* ¶ 25.

- Nikola's CEO said, "We're not going to be a merchant of batteries.  This in the long run will become our in-house capability."  *Id.*

- Nikola had become aware that Romeo was facing a cash shortfall and Nikola would need to provide Romeo with up to $50 million in liquidity.  *Id.* ¶ 27.

- Rather than claiming that financial reasons prevented Romeo from performing the Purchase Agreement with Lion, Romeo claimed that it could not supply battery packs due to "technical difficulties."  On instruction from Nikola, Romeo employed the "technical difficulties" excuse from August 2022 onwards.  *Id.* ¶¶ 28-29.

- Romeo refused to provide Lion with sufficient documentation to show these alleged technical failures and otherwise failed cooperate with Lion.  *Id.* ¶ 32.

- On November 3, 2022, during Nikola Corporation's third quarter 2022 earnings call, Mr. Brady publicly disclosed what Lion suspected all along – that Nikola had been interfering with Romeo's existing contracts because they were "loss leaders[.]"  *Id.* ¶ 35.

- On December 7, 2022, at Nikola's instruction, Romeo sent a written notice purporting to terminate the Purchase Agreement on the basis of the alleged technical difficulties.  *Id.* ¶ 37.

- Nikola intentionally interfered with the Purchase Agreement by causing Romeo to breach, and thereafter purport to terminate, the Agreement.  *Id.* ¶ 43.

- Nikola acted improperly to avoid the financial losses that would result from Romeo's contracts with Lion, to make Romeo its captive battery provider, and to injure Lion, a direct competitor.  Nikola even contacted Lion customers and told them Lion would not be able to deliver the vehicles it had promised.  *Id.* ¶¶ 48-49.

1    • Nikola interfered with Lion's business expectancies in the same way. *Id.*
2        ¶¶ 53-62.

3        The wrongs alleged in Lion's newly proposed amended complaint are essentially
4    the same. Lion continues to allege that Nikola interfered with the Lion-Romeo Purchase
5    Agreement and with Lion's business expectancies by purchasing Romeo, causing it to
6    breach the Purchase Agreement, and providing the false explanation of technical
7    difficulties, all to avoid financial losses to Nikola, improve Nikola's competitive position
8    against Lion, and harm Lion's customer relationships. Doc. 121-1. This wrong was known
9    to Lion when the case was filed in March 2023. The proposed amended complaint asserts
10   no new tort. Instead, it alleges that the Individual Defendants – all of whom were known
11   to be deeply involved in Nikola's management during these events – acted "in concert"
12   with Nikola to commit these torts and therefore are jointly and severally liable with Nikola,
13   or aided and abetted Nikola's commission of these torts by providing "substantial
14   assistance" and therefore are liable for the torts. *Id.* ¶¶ 201-234.

15       Lion identifies the following information to justify its late-sought amendment:
16   Nikola wanted an exclusive supply arrangement with Romeo (not new), the Individual
17   Defendants and Nikola learned Nikola would suffer financial losses under Romeo's
18   contracts with Lion and others (not new), Nikola "hatched a covert plan to void these
19   losses" (not new), the Individual Defendants substantially assisted in this plan (new),
20   Nikola directed Romeo to demand higher prices from customers or shut down their
21   production line for their batteries (not new), the Individual Defendants were involved in
22   this direction (new), "Nikola was responsible for managing Romeo's performance under
23   the Purchase Agreement, and faced with the prospect of incurring millions of dollars in
24   losses for a Purchase Agreement that Nikola did not negotiate, much less agree to, the
25   Individual Defendants directed Romeo to breach the Purchase Agreement" (only new in
26   claiming the Individual Defendants' involvement). Doc. 121 at 4-5. Thus, the truly new
27   allegations are that the Individual Defendants, as managers of Nikola, were involved in the

28

conduct described in the original complaint.  This should have been obvious from the start because the Individual Defendants were Nikola's managers.

The record supports this conclusion.  Lion's original complaint quoted Brady, as the Chief Financial Officer of Nikola, stating publicly that Romeo's contracts, including with Lion, would negatively affect Nikola's profitability in 2022.  Doc. 1 ¶ 26.  The complaint further quoted Brady as saying the Romeo contracts were "loss leaders" that Nikola was addressing, and that Nikola was "very much focused on simply supplying battery modules and packs to Nikola."  *Id.* ¶ 35.  Further, Lion personnel had conversations directly with Brady in 2022 about these issues. *See* Docs. 122-1 ¶ 1, 122-2.

Lion also knew that Worthen and Kiessig were personally involved in the 2022 negotiations over Romeo's performance of the Purchase Agreement.  In a 2023 arbitration between Lion and Romeo, Lion produced several emails regarding performance of the Purchase Agreement that included Worthen and Kiessig.  *See* Docs. 122-1 at 2, 122-3 at 1-4, 122-4 at 1-4, 122-5 at 1-9, 122-6 at 1-3, 122-7 at 1-2.

In addition to Lion's interaction with these key officers in 2022, Nikola told Lion more than eleven months ago that Brady, Kiessig, and Worthen were the key personnel in the Romeo acquisition and in actions related to the Lion Purchase Agreement.  On January 9, 2023, in response to a Lion interrogatory asking the identity of persons "primarily responsible for the negotiations and closing of the Acquisition Agreement" with Romeo, the first three names listed by Nikola were Worthen, Kiessig, and Brady.  Doc. 122-21 at 13.  When asked who was "primarily responsible for analyzing Romeo's battery supply contracts as part of the acquisition," the first two individuals named by Nikola were Worthen and Kiessig.  *Id.* at 17.  And when asked who was "primarily responsible for managing the transition related to the Acquisition," the first three persons listed were Worthen, Kiessig, and Brady.  *Id.* at 18.  Thus, in addition to its own interactions with these individuals, Lion was told in early January of this year that they were the persons at Nikola most centrally involved in the events at issue in this case.  Concluding that they "acted in concert" with or "substantially assisted" Nikola in these events required little imagination.

Lion contends that it had a Rule 11 obligation to ensure that its allegations against the Individual Defendants were factual before suing them. Doc. 123 at 5. True, but if Lion did not have all of the necessary factual information to sue the Individual Defendants when the complaint was filed or in the early months of discovery, it certainly knew that they were directly involved in the allegedly tortious conduct. Faced with a near-term deadline for amending the complaint – a deadline put in place by the Court to avoid precisely this situation of adding parties and claims late in the case – Lion should have focused its efforts on obtaining any additional information that would be needed to bring the claims. Lion makes no argument that it sought diligently to do so, or that efforts to do so would have been unsuccessful. Lion instead waited months as general document discovery and depositions occurred. It expressed no concern when the Court set the initial 60-day amendment deadline, stating on the record that "those limits will be just fine." *See* Court's Westlaw Case Notebook Transcript, 10-17-13 hearing, at 58-59. Nor did Lion seek to extend the amendment deadline when it sought extension of other deadlines in the case. Doc. 49.

This is not a situation where Lion was disadvantaged by a substantial deficit of information. As noted above, Lion communicated with Worthen, Kiessig, and Brady throughout the allegedly wrongful conduct. It completed an arbitration in late 2023 concerning Romeo's alleged breach of the Purchase Agreement, where documents were exchanged and witnesses provided evidence. Lion knew Kim Brady was Nikola's Chief Financial Officer, Joseph Kiessig was Nikola's Director of Corporate Finance and Strategy, and Britton Worthen was Nikola's Executive Vice President, Chief Legal Officer, and Corporate Secretary throughout the events in this case. It could have hardly been a surprise that discovery showed they were deeply involved in Nikola's actions. If Lion wanted to consider bringing aiding and abetting claims against key Nikola personnel, it could have sought the relevant discovery promptly, and the Court's assistance if the discovery was not forthcoming. It never did so.

In summary, the Court cannot conclude that Lion acted with reasonable diligence to investigate the Individual Defendants' involvement in the events at issue in the original complaint. It waited seventeen months after this lawsuit was filed, almost one year after discovery started, and nine months after the amendment deadline before seeking to add individuals and new claims to this case. If the involvement of the Individual Defendants was not clear from the beginning, it could have been explored through discovery months ago.

Lion has not shown good cause to extend the amendment deadline. The Court therefore will deny the motion to amend.

**II.     Nikola's Motion to Strike.**

Rule 26(a)(1) requires a party to disclose each individual that is likely to have discoverable information and whom the disclosing party may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(i). Rule 26(e) requires the party to supplement this disclosure "*in a timely manner* if the party learns that in some material respect the disclosure . . . is incomplete[.]" Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). This duty to supplement also applies to incomplete interrogatory responses. *Id.*

Lion served supplemental Rule 26(a)(1) disclosures on September 27, 2024, about one month before the close of fact discovery in this case. Doc. 120-7. The supplement included twelve new fact witnesses not previously identified in Lion's disclosures, and six new customers claimed to have cancelled contracts with Lion on the basis of Nikola's actions – customers who had not been disclosed in response to a Nikola interrogatory served on January 15, 2024, seeking such information.

Nikola asks the Court to preclude Lion from using these witnesses and asserting damages from these customers at trial. Nikola argues that the supplemental disclosures were not "timely" as required by Rule 26(e), that it had little time to conduct discovery into these and customers, and that Rule 37(c)(1) requires that the witnesses and customers be excluded from this case. During oral argument, Nikola noted that it was able

to depose three of the witnesses before the close of fact discovery – Poulin, Bedard, and Sicotte – and withdrew these witnesses from its motion.

### A.    Witnesses.

Lion contends that its disclosure of the twelve witnesses was timely because Lion did not realize their importance to this case until document discovery was largely completed and depositions had started in August 2024.  The Court finds this argument entirely unpersuasive.  Each of the twelve witnesses is a current or former employee of Lion.  Lion had access to them and their files from the outset of this case, and knew it had disclosure obligations under Rule 26(a)(1).  The Court cannot conclude that waiting almost a year into fact discovery, and finally disclosing these witnesses one month before the close of discovery, was "timely" under any definition of that word.

Lion also notes that Rule 26(e) does not require supplementation if the information has "been made known to other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).  Lion identifies various communications between the parties where some of the witnesses were identified as custodians likely to have relevant information, and various emails produced in discovery where some of the witnesses were shown as the author or recipient or were copied.  While these exchanges may have alerted Nikola to the fact that the witnesses might have relevant information, that is only half of what Rule 26(a)(1) requires.  Lion is also required to disclose witnesses with relevant information whom Lion "may use to support its claims[.]"  Fed. R. Civ. P. 26(a)(1)(A)(i).  Lion does not contend that the exchanges revealed anything about this fact.  This is not a trivial piece of information.  As this Court has held elsewhere, Nikola was "entitled to rely on the 'critical' purpose of Rule 26(a)(1)(A)" – to identify "which witnesses and documents the disclosing party may use to support its claim or defenses."  *McCollum v. UPS Ground Freight Inc.*, No. CV11-0961 PHX DGC, 2013 WL 105225, at *3 (D. Ariz. Jan. 9, 2013) (citation omitted).  As the Ninth Circuit has stated, "[a]n adverse party should not have to guess which undisclosed witnesses may be called to testify."  *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014).

Lion further argues that the sanction of exclusion is not warranted under Rule 37(c)(1) because the delayed disclosures were "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1). As explained above, however, Lion was not substantially justified in waiting almost one year to disclose witnesses who were its present or former employees. Nor was the failure to disclose harmless. The witnesses were disclosed with little time to conduct the discovery they would warrant or tailor other discovery in light of what they reveal. Such late disclosure also would cause disruption to the pretrial discovery process, which the Ninth Circuit does not view as harmless. *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008).

The Court accordingly concludes that Lion's late disclosure of twelve fact witnesses violated its Rule 26(a)(1) disclosure obligation and its Rule 26(e) supplementation duty. Because the late disclosure was not substantially justified or harmless, Rule 37(c)(1) requires that the twelve witnesses – less the three Nikola has withdrawn from the motion – be excluded from summary judgement briefing and trial. *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) ("Rule 37(c)(1) is a 'self-executing,' 'automatic' sanction designed to provide a strong inducement for disclosure. The only exceptions to Rule 37(c)(1)'s exclusion sanction apply if the failure to disclose is substantially justified or harmless.") (citations omitted).[2]

## B.    Customers.

As noted, Nikola served interrogatories on Lion in January 2024 asking for the identity of all customers whom Lion claims cancelled their contracts because of Nikola's actions, and all business Lion claims to have lost through Nikola's actions. Doc. 120-3 at 8-9. Lion identified allegedly lost customers and $17.5 million in lost business in a March supplemental response. Doc. 120-5 at 9. On September 27, 2024, Lion disclosed the six additional customers at issue in this motion – Jet-Route, MLI Leasing, New York Times,

---

[2] The nine excluded witnesses are Larry Brasfield, Patrice Desrochers, Cindy Lambert, Ron Mearns, Steve Usiak, Charles Williams, Frederic Pinard, Marc-Andre Gauthier, and Kamdem Nounamo.

Transport Sebastian Larose, Transport Guerrier, and Transport Transbo – with additional damages totaling about $11 million.  Doc. 120-7 at 14-15.

Lion claims that this was timely supplementation because these customers did not cancel their contracts with Lion until well into the discovery period.  During oral argument, Lion provided the following cancellation dates:

- Transport Sebastian Larose          April 22, 2024
- Jet-Route                                        May 30, 2024
- MLI Leasing                                    June 20, 2024
- New York Times                            June 20, 2024
- Transport Guerrier                        July 15, 2024
- Transport Transbo                        July 15, 2024

As discussed above, Rule 26(e) requires "timely" supplementation, but it does not define "timely."  One respected commentator has provided a helpful summary of relevant case law:

> The rule deliberately makes no attempt to define when or how these periodic supplementations must be made, and the case law tends to be very fact-specific yielding little in the way of prospective guidance.  However, a handful of general principles, all self-evident, can be stated.  First, courts consider the amount of time that passes between when a party acquires the new or corrected information and when it supplements.  Second, courts assess the length of the delay in relation to the stage of the pretrial proceedings and the events that are occurring during the delay. . . .  Third, when new information is learned shortly before trial, supplementation should occur immediately.

1 S. Gensler & L. Mulligan, Federal Rules of Civil Procedure, Rules and Commentary, Rule 26 at 930 (2023) (footnotes omitted, citing cases).

The third of Gensler's principles does not apply here because Lion did not acquire the information shortly before trial.  The other two principles, however, are quite helpful.

The stage of the pretrial proceedings when Lion learned the new information was critical.  Only months remained in the fact discovery period – a period the Court had

1   already extended once (Doc. 52) – and the Court had advised the parties that it would not

2   be inclined to grant extensions.  Doc. 39.  Prompt disclosure was therefore warranted.

3   When Lion learned the new information is also highly relevant.  Lion learned of

4   Transport Sebastian's cancellation in April, six months before the close of discovery, and

5   yet waited five months to make the disclosure, when little time remained to complete the

6   necessary discovery.[3]  Lion learned of Jet-Route's cancellation in May, five months before

7   the close of discovery, and yet waited four months to disclose this information to Nikola,

8   again with little time remaining for discovery.  These were not timely supplementations.

9   Nor does the Court find them substantially justified when Lion itself identifies the dates on

10  which it learned of the cancellations.  And they were not harmless for reasons noted above

11  with respect to the late witness disclosures.  The Court accordingly will exclude Lion from

12  presenting evidence about or damages caused by the cancelations by Transport Sebastian

13  and Jet-Route.

14  The cancellations in June and July present a closer question.  Lion waited three

15  months to disclose the June cancellations (MLI Leasing and The New York Times) and

16  two months to disclose the July cancellations (Transport Guerrier and Transport Transbo).

17  Reasonable minds could differ on whether these disclosures were timely.  But when the

18  Court considers the flurry of discovery activity that was underway in the summer months

19  and that it could have taken time to conclude that these cancellations were due to Nikola's

20  conduct (Lion is not claiming that every cancellation it received was caused by Nikola

21  (compare Doc. 120-7 at 14-15 to Doc. 105-5 at 2)), the Court does not find that the

22  disclosures were so untimely as to invoke the exclusion sanction of Rule 37(c)(1).

23  Clearly, however, Nikola must be permitted to conduct discovery related to these

24  four cancellations.  Sufficient time for discovery did not exist between September 27 and

25  the close of discovery on October 30, 2024.  The Court accordingly will modify the

26  _____

27  [3] Lion notes that a Lion witness told Nikola in a late August deposition that Lion
    had learned of another $11 million in damages, and faults Nikola for not asking the witness

28  to identify the companies whose cancellations gave rise to these alleged losses.  But the
    disclosure obligation was Lion's, not Nikola's, and the testimony given in August fell well
    short of Lion's disclosure obligation under Nikola's January interrogatories.

litigation schedule.  Additional fact discovery will be conducted by Nikola and will be limited to the contract cancellations by MLI Leasing, The New York Times, Transport Guerrier, and Transport Transbo and the amount of damages sought by Lion for these cancellations.  Nikola may serve on Lion four additional request for production, requests for admission, and interrogatories and take one deposition for each of these four entities. If letters rogatory are needed to secure such depositions, Nikola shall submit them to the Court promptly.  The litigation schedule will be modified as follows:

1. The fact discovery deadline will be extended, solely for the Nikola-initiated discovery identified above, until **January 31, 2025**.

2. The deadline for Plaintiff to provide full and complete expert disclosures, as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure, shall be **February 14, 2025**.

3. The deadline for Defendant to provide full and complete expert disclosures, as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure, shall be **March 14, 2025**.

4. The deadline for Plaintiff to provide rebuttal expert disclosures, if any, shall be **April 11, 2025**.

5. The deadline to complete expert depositions shall be **May 16, 2025**.

6. The deadline to file dispositive motions shall be **June 13, 2025**.

7. The deadline for the parties to file two-page letters regarding summary judgment shall be **May 16, 2025**.

Except as expressly set forth in this Order and the already-modified date for good faith settlement talks, the original terms of the Case Management Order (Doc. 39) remain in effect.

**III. Motions to Strike.**

The parties have filed seven motions to seal that remain pending.  Docs. 75, 82, 90, 103, 107, 111, 126.  The Court previously expressed its frustration about the confusing manner in which the motions were filed and documents were lodged.  Doc. 98.  Most of

1    the documents lodged under seal have now been filed in redacted form.  Unfortunately,

2    these redacted documents show that the parties have seriously over-redacted.  For example,

3    the parties seek to seal *all of the attachments* to Nikola's response to Lion's motions to

4    amend, *all of the attachments* to Nikola's motion to strike, and *all of the documents* referred

5    to in Nikola's motion for letters rogatory.  *See* Doc. 82 ¶¶ 13-15.  The parties have not

6    shown compelling reasons for such broad sealing, as they claim.  *See id.* at 4-8; *Kamakana*

7    *v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).  If some portions of the

8    documents contain truly confidential information, that does not justify sealing entire

9    documents.

10          Similarly, redactions within the motions themselves are seriously overbroad.  For

11   example, Nikola's motion to strike redacts such information about the *number* of

12   employees identified in a discovery response, the language of Nikola's own interrogatories

13   (such as "identify and describe any existing or potential business that Lion claims it lost as

14   a result of any tortious interference by Nikola"), the total amount of damages claimed by

15   Lion, what countries certain customers were from, and other generic and non-confidential

16   information.  *See, e.g.*, Doc. 84 at 4-6 (redacted language highlighted).

17          The Court will not grant such broad motions to seal.  The problem, however, is that

18   the docket now contains numerous documents lodged with omnibus motions to seal and

19   redacted documents that conceal far too much information.  One alternative would be to

20   simply deny the motions to seal and file all lodged documents in the docket, but this might

21   reveal some information that is legitimately confidential.  Another alternative would be to

22   have the parties re-do their motions to seal and redactions and submit them again to the

23   Court, but this would burden the docket with even more duplicates of motions, responses,

24   and replies, and the Court still may not accept the breadth of their proposed sealings.

25          The Court directs the parties to file a joint proposal for how to narrow the redactions

26   and sealings to an appropriate amount, and how to manage the handling of such matters on

27   the docket.  This joint filing shall be made by **December 6, 2024**.  For purposes of this

Order, the Court has included the names and other information that were freely discussed by the parties during oral argument.

**IT IS ORDERED:**

A.    Lion's motion for leave to file an amended complaint (Doc. 121) is **denied**.

B.    Nikola's motion to strike (Doc. 120) is **granted in part and denied in part** as set forth above, and the litigation period is extended as set forth above.

C.    Nikola's motion for letters rogatory (Doc. 119) is **denied as moot**.

D.    The parties shall file a joint proposal to cure the current sealing problem by **December 6, 2024**.

Dated this 25th day of November, 2024.

David G. Campbell
Senior United States District Judge